NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 24, 2017
Decided March 6, 2017

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-1236

| | |
|---|---|
| RONALD SWEATT, | Appeal from the United States |
|     *Plaintiff-Appellant*, | District Court for the Northern District |
| | of Illinois, Eastern Division. |
|     v. | |
| | No. 14-cv-7891 |
| UNION PACIFIC RAILROAD CO., | |
|     *Defendant-Appellee*. | John Z. Lee, |
| | *Judge*. |

**O R D E R**

Ronald Sweatt appeals the grant of summary judgment for his former employer, Union Pacific, in his suit under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109. The district court concluded that Sweatt failed to properly exhaust his administrative remedies before filing suit. We agree and thus affirm the district court's judgment.

Sweatt repaired railroad tracks for Union Pacific from 2006 to 2009. He told the company in December 2009 that he'd been diagnosed with carpal tunnel syndrome,

a condition he attributed to his work on the railroad. Three years later his treating physician, Dr. Robert Coats, recommended surgery, which Sweatt asked the company to pay for. Union Pacific disputed that Sweatt's carpal tunnel was work-related and declined his request in the summer of 2012.

In November 2012 Sweatt sued Union Pacific under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, a statute that makes railroad companies liable for negligence resulting in workplace injuries. Sweatt contended that the FELA required the company to pay for treating his carpal tunnel syndrome. The district court dismissed Sweatt's suit at summary judgment, concluding that the statute of limitations already had run before Sweatt filed suit. This court affirmed. *See Sweatt v. Union Pacific R.R. Co.*, 796 F.3d 701, 707–08 (7th Cir. 2015).

In January 2014—shortly after Sweatt responded to Union Pacific's motion for summary judgment in his FELA suit—he filed an administrative complaint with the Occupational Safety and Health Administration, asserting that the company violated the FRSA when it refused to pay for surgery for his carpal tunnel syndrome. The FRSA prohibits a railroad company from retaliating against an employee for reporting a workplace injury or seeking medical treatment. 49 U.S.C. § 20109(a–b). It also provides that a railroad company "may not deny, delay, or interfere with the medical or first aid treatment of an employee who is injured during the course of employment," 49 U.S.C. § 20109(c)(1). In his complaint Sweatt pointed to Dr. Coats's statement during an August 2013 deposition that Sweatt's carpal tunnel syndrome was work-related, and asserted that the company—by refusing to pay for surgery—had retaliated against him and interfered with his medical treatment.

The Secretary of the Department of Labor did not issue a timely decision on Sweatt's complaint, so Sweatt brought this suit in federal court, reiterating that Union Pacific violated the FRSA by refusing to pay for his surgery. *See* 49 U.S.C. § 20109(d)(3) (authorizing employee to sue in federal court if Secretary of Labor has not issued final decision on administrative complaint within 210 days). The district court eventually entered summary judgment for Union Pacific, concluding that the statute of limitations barred Sweatt's FRSA claim. As the court explained, Sweatt knew by the summer of 2012 that the company would not pay for his surgery and yet he did not file his administrative complaint until January 2014, long after the applicable 180-day deadline, *see* 49 U.S.C. § 20109(d)(2)(A)(ii).

On appeal Sweatt first challenges the district court's determination that the statute of limitations began to run in the summer of 2012, when Union Pacific first told

him it would not pay for his surgery.[1]  According to Sweatt, the statute of limitations did not begin to run until August 2013, when Dr. Coats opined during a deposition in his prior suit that the condition was work-related, or October 2013, when the doctor "executed a written order prescribing the necessary surgery." (Appellant's Br. at 18.) As Sweatt sees it, because the company refused his initial request to pay for the surgery, he had "to take the time to substantiate that he was engaging in a protected activity seeking medical care prescribed by his doctor for a work-related injury." (*Id.* at 16.)

This explanation is nonsensical—Dr. Coats opined in December 2009 that Sweatt's carpel tunnel syndrome was work-related, and Sweatt knew by the summer of 2012 that the company would not pay for the surgery because it disagreed with that opinion. If Sweatt believed he had to further "substantiate" his position that his carpal tunnel syndrome was work-related before he could pursue a FRSA claim, he could have presented the company with an affidavit from Dr. Coats in 2012, once he had notice that the company disagreed with Dr. Coats's opinion.

Next Sweatt argues that his administrative complaint was timely because the statute of limitations reset in October 2013, when he renewed his request that Union Pacific pay for his surgery. He invokes *Groesch v. City of Springfield*, 635 F.3d 1020, 1026 (7th Cir. 2011), in which this court held that every paycheck reflecting unlawful discrimination constitutes a new cause of action under 42 U.S.C. § 1983. Sweatt says that the "rationale expressed in *Groesch* applies to the present case," suggesting that a new FRSA claim accrues whenever the company denies a request to pay medical bills. That can't be right—Union Pacific has maintained since the summer of 2012 that it is not responsible for Sweatt's medical bills, and he cannot toll the statute of limitations indefinitely by making cumulative requests the company already has denied.

AFFIRMED.

---

[1] Throughout this litigation, Union Pacific has disputed that Sweatt's complaint states a claim under the FRSA, but has focused its efforts on explaining why Sweatt's administrative complaint was untimely. We therefore assume—without deciding—that the allegations in Sweatt's complaint could state a FRSA claim.